NO. 22-55416

# In The
# United States Court of Appeals
## For The Ninth Circuit

**DANIEL E. DAVIS; PETER CONTI;
GRINGO HOLDINGS, LLC,**

*Plaintiffs – Appellants*,

**v.**

**BLUE TONGUE FILMS;
DENVER AND DELILAH PRODUCTIONS; A. J. DIX;
NASH EDGERTON; EROS INTERNATIONAL MEDIA LTD.;
TRISH HOFFMAN; BETH KONO; MATTHEW STONE;
ANTHONY TAMBAKIS; CHARLIZE THERON;
REBECCA YELDHAM,**

*Defendants – Appellees*.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES**

_____

## REPLY BRIEF OF APPELLANTS

_____

Spencer Dreier, Esq.
235 East 44th Street
New York, New York 10017
(917) 841-9571

Jonah A. Grossabrdt
Matthew L. Rollin
SRIPLAW
8730 Wilshire Boulevard, Suite 350
Beverly Hills, California 90211
(323) 364-6565

*Counsel for Appellants*

*Counsel for Appellants*

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

In accordance with Federal Rule of Appellate Procedure 26.1, the undersigned counsel for Plaintiffs-Appellants state that Daniel E. Davis and Peter Conti are individuals, and Gringo Holdings, LLC is a limited liability with no parent company or subsidiary, and that no publicly held company owns 10% or more of its stock.

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ................................................................. i

TABLE OF AUTHORITIES ................................................................. iii

ARGUMENT ................................................................................1

   I.   THIS IS A CASE OF TWO CONFUSINGLY SIMILAR TITLES ...............1

   II.  THIS IS A CASE OF FIRST IMPRESSION...................................2

   III.   TITLE-VS-TITLE CASES GENERALLY WARRANT GREATER PROTECTION THAN OTHER LANHAM ACT CLAIMS INVOLVING EXPRESSIVE WORKS .........................................................6

     A. The Second Prong Of Rogers Is Satisified In A Title-vs-Title Case Where The Likelihood Of Confusion Is "Particularly Compelling" – Particularly Where The Defendant Has Intended To Decieve Consumers By Using The Title .........................................................................8

     B.  Appellants Have Alleged A Particularly Compelling Likelihood of Confusion from Defendant's Similar Use of the Title Here .............................11

     C.  Appellants Have Not Waived This Argument .............................16

   IV.   IN ANY EVENT, APPELLANTS SATISFY THE SECOND PRONG OF ROGERS UNDER THE GORDON CRITERIA .................................18

   V.  THIS COURT'S PUNCHBOWL DECISION .............................24

   VI.   THE DISTRICT COURT IMPROPERLY DISMISSED APPELLANTS' UCL CLAIM.......................................................................26

CONCLUSION ...........................................................................29

CERTIFICATE OF COMPLIANCE .......................................................30

CERTIFICATE OF SERVICE ............................................................31

# <u>TABLE OF AUTHORITIES</u>

**Cases**          **Page(s)**

*Betty's Found. for Elimination of Alzheimer's Disease v. Trinity Christian Center*,
2022 WL 807391 (9th Cir. Mar. 16, 2022) ...................................................... 28

*CI Games S.A. v. Destination Films*,
2016 WL 9185391 (C.D. Cal. Oct. 25, 2016) ...................................... 12, 13, 14

*Cleary v. News Corp.*,
30 F.3d 1255 (9th Cir. 1994) ............................................................... 27

*Cordova-Gonzalez v. Cordova-Gonzalez*,
996 F.2d 1334 (1st Cir. 1993) ............................................................. 8

*Dr. Seuss Enters., L.P. v. ComicMix L.L.C.*,
983 F.3d 443 (9th Cir. 2020) ............................................................ 3, 5

*E.R. Fegert, Inc.*,
887 F.2d 955 (9th Cir. 1989) ............................................................. 18

*E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*,
547 F.3d 1095 (9th Cir. 2008) ........................................................... 27

*Elec. Arts, Inc. v. Textron Inc.*,
No. C 12-00118 WHA, 2012 WL 3042668 (N.D. Cal. July 25, 2012) ........... 14

*Gordon v. Drape Creative, Inc.*,
909 F.3d 257 (9th Cir. 2018) .......................................................... 9, 18

*Harold Lloyd Ent., Inc. v. Moment Factory One, Inc.*,
No. ?DOCKET?, 2015 WL 12765142 (C.D. Cal. Oct. 29, 2015) ................... 27

*Hermes Int'l v. Mason Rothschild*,
2022 WL 1564597 (2022) ............................................................. 9, 16

*Hormel v. Helvering*,
312 U.S. 552 (1941) ...................................................................... 17

*Inland Cities Express, Inc. v. Diamond Nat'l Corp.*,
524 F.2d 753 (9th Cir. 1975) ............................................................ 18

*Lopez v. Thompson*,
202 F.3d 1110 (9th Cir. 2000) ................................................... 14-15, 15

*Mallard Creek Indus. v. Morgan*,
    56 Cal. App. 4th 426 (1997) ............................................................... 28

*Mattel, Inc. v. MCA Records*,
    296 F.3d 894 (9th Cir. 2002) ....................................................... 18, 19

*No Doubt v. Activision Publ'g, Inc.*,
    192 Cal. App. 4th 1018 (2011) ........................................................ 26

*Punchbowl, Inc. v. AJ Press*,
    2022 WL 16911996 (9th Cir. Nov. 14, 2022) ............................... 24, 25

*Rothman v. Hosp. Serv. of S. Cal.*,
    510 F.2d 956 (9th Cir. 1975) ............................................................. 18

*Serova v. Sony Music Ent.*,
    13 Cal. 5th 859 (Aug. 18, 2022) ...................................................... 26

*Trs. of Amalgamated Ins. Fund v. Geltman Indus., Inc.*,
    784 F.2d 926 (9th Cir. 1986) ............................................................. 17

*Twentieth Century Fox TV v. Empire Distrib.*,
    161 F. Supp. 3d 902 (C.D. Cal. 2016) ............................................. 28

*Twentieth Century Fox TV v. Empire Distrib., Inc.*,
    875 F.3d 1192 (9th Cir. 2017) ...................................................... 2, 28

*United States v. Johnson*,
    599 F.3d 339 (4th Cir. 2010) ............................................................. 11

*Winchester Mystery House, L.L.C. v. Glob. Asylum, Inc.*,
    210 Cal. App. 4th 579 (2012) .......................................................... 26

*Yee v. City of Escondido*,
    503 U.S. 519 (1992) ........................................................................ 17

## ARGUMENT

## I.  THIS IS A CASE OF TWO CONFUSINGLY SIMILAR TITLES

Appellees contend this is not a case of two confusingly similar titles, because Appellants' book title adds a subtitle, which is not included in Appellees' movie title.  This contention is meritless.

The title of the book is "GRINGO." The subtitle is "My Life On The Edge As An International Fugitive." (ER-16; SAC ¶15). A subtitle, according to Oxford's dictionary, is "a subordinate title of a published work giving additional information about its content."  It is not part of the title.  The title identifies the book; the subtitle partially explains the book.

Appellees attempt to show that the subtitle is part of the title by restating the title with a colon connecting it to the subtitle (Br. at 3) — which does not appear on the cover of the book (ER-16).  They show the title and subtitle in the same font and in the same size lettering (id), though the subtitle actually appears on the book cover in much smaller letters, in an entirely different font.  Id.

In any event, what matters is that Appellants allege a trademark only in the title "GRINGO" (ER-20; SAC ¶38), not in the subtitle, and, as Appellees acknowledge (Br. at 6), the district court found that Appellants had adequately alleged a trademark in that title. (ER-29). Appellees don't challenge that finding. Thus, the issue in this case is whether the trademark in *that* title — "GRINGO" —

was unlawfully infringed, and that title is not only similar to but identical to the title that Appellees used for their movie.

## II.   **THIS IS A CASE OF FIRST IMPRESSION**

Appellees contend that this case must be dismissed under prior dispositive authority.  In fact, however, this Court has never adjudicated a case resembling this one.  Two prior cases addressed by Appellees merit further attention in this regard:

1.   Twentieth Century Fox Television v. Empire Distrib., 875 F.3d 1192 (9th Cir. 2017) did not involve expressive works with confusingly similar titles.  The plaintiff alleged a trademark in the name of a record company — not an expressive work — which the defendant used as the title of a TV show.  Nevertheless, the Court observed (at 1196-97) that footnote 5 in Rogers v. Grimaldi, which excluded from the Rogers test "misleading titles that are confusingly similar to other titles," "***may*** be ill-advised or unnecessary." (Emphasis added). That statement was obviously not definitive, and, as shown in Appellants' opening brief (at 17-18), it was also merely *dicta*.  See also Black's Law Dictionary at 454 (6th ed. 1990) (quoted with approval by this Court in Export Group, defining *dicta* as "expressions in the court's opinion which go beyond the facts before the court."). In any event, even assuming *arguendo* that Twentieth Century Fox resolved the applicability of Rogers to title-vs-title cases in this Circuit — it did not address, much less resolve, the criteria for determining

2

when a confusingly similar title is or is not "explicitly misleading" under the second prong of <u>Rogers</u>. This case asks the Court to do that.

2. In <u>Dr. Seuss Enters., L.P. v. ComicMix, LLC,</u> 983 F.3d 443 (9th Cir. 2020), this Court, for the first time, did entertain a case of two expressive works with confusingly similar titles. And the Court did affirm dismissal of the claim for failure to show that the defendant's use of the trademarked title was "explicitly misleading." Nevertheless, there are fundamental differences between that case and this:

a. Unlike this case, in <u>Dr. Seuss</u> the defendant expressly stated on the cover of its work that it was "not associated with or endorsed by" the plaintiff. Therefore, there was no conceivable basis for anyone to be confused by the otherwise confusingly similar titles.

b. Unlike this case, <u>Dr. Seuss</u> did not involve two works with *identical* titles. The Court in <u>Dr. Seuss</u> attributed significance to the fact that the defendant had added even a single word to the plaintiff's trademarked title. Appellees chose not to do so here.

c. Unlike this case, in <u>Dr. Seuss</u> there was no allegation of any intent by the defendant to deceive consumers. Appellees point to allegations there that the defendant intended to "mimic many illustrations in Dr. Seuss's work" and to "copy portions of" Dr. Seuss's work "as accurately as possible" (Br. at 45-46) — but the issue is not whether the defendant intended to imitate plaintiff's mark or even copy

it but rather whether he intended to deceive the public by doing so. Obviously, that was not the case in <u>Dr. Seuss</u>, as evidenced by the defendant's express disclaimer of any association with Dr. Seuss. That was also evident from the very premise of the defendant's work, which was to amuse the public by poking fun at the plaintiff's work, not to mislead the public into believing it was the plaintiff's work.

Here, on the other hand, Appellants allege that Appellees used Appellants' trademarked title "with the specific intent to deceive, mislead and cause confusion among consumers as to the content and origin of the Movie and its relationship to the Book and its author and subject in order to exploit for their benefit the goodwill, popularity and commercial success of the Book" (ER-16-17,20; SAC ¶¶23,26,39).

Appellees counter (Br. at 20) that this allegation of intent is insufficient, because it is made "upon information and belief." Obviously, virtually any good faith allegation of intent must be made upon information and belief. What matters is whether the allegation is supported with additional allegations setting forth the "information" upon which the "belief" is reasonably based, and Appellants have done that here. They allege, *inter alia*, that (i) Appellees had originally used a different working title for their movie but then changed it to "GRINGO" when Appellants' book with the same title (and some similar themes) achieved its popularity; (ii) Appellees used the title "GRINGO" to refer to the protagonist of their movie, who, like the protagonist in Appellants' book, was a non-Hispanic

American who had been selling marijuana and was now on the run, out of his element, south of the border; and (iii) Appellees promoted their movie with the "GRINGO" title by pairing the title on their film cover, in a similar font to the book title, with the Amazon imprimatur — i.e., that it was an "Amazon Original Movie" — at the same time Appellants were promoting their book by pairing the title on its cover with the Amazon imprimatur "Amazon #1 Bestseller." (ER-16-19; SAC, ¶¶23,26-27,41-42).

The only reason allegations of intent upon information and belief were found insufficient in the district court cases cited by Appellees (Br. at 20) is because the courts found that, unlike here, there were no factual allegations even attempting to support the bare allegation of intent made upon information and belief.

Failing to show that Appellants inadequately allege an intent to deceive consumers, Appellees ultimately take the position that it just doesn't matter whether they intended to deceive consumers. (Br. at n.15). They contend that "allegations of a defendant's subjective intent are [not] relevant to <u>Rogers</u>' second prong." This position is hard to reconcile with their insistence that *all* that matters for purposes of the second prong is "the nature of the junior user's behavior," "not the impact of the use." <u>Id.</u> at 38. What defines the nature of one's behavior more than their intent? Moreover, their position is hard to reconcile with the basic proposition that intentional deception is never protected speech under the First Amendment.

Appellants are unaware of any case in this Circuit — including <u>Dr. Seuss</u> — where a plaintiff has been denied Lanham Act protection against a defendant whose use of plaintiff's mark not only created a likelihood of confusion among consumers but was actually intended to mislead them.

d. Unlike this case, <u>Dr. Seuss</u> did not involve two expressive works targeting the same consumer class. The defendant in <u>Dr. Seuss</u>, with his mash-up spoof of Dr. Seuss and "Star Trek," was clearly targeting a very different audience (the "Trekkie" generation) from the plaintiff's targeted audience (young children having "The Cat In The Hat" read to them at bedtime). Here, on the other hand, Appellees were targeting the very same consumer class of Amazon entertainment media purchasers who were the principal market for Appellants' book.

## III. TITLE-VS-TITLE CASES GENERALLY WARRANT GREATER PROTECTION THAN OTHER LANHAM ACT CLAIMS <u>INVOLVING EXPRESSIVE WORKS</u>

There was a reason for footnote 5 in <u>Rogers</u>. The Second Circuit rightly recognized the particular vulnerability of consumers to being misled by titles of expressive works that are confusingly similar to titles of other expressive works, because it is the title, more than anything else, that identifies an expressive work for the consumer at the point of purchase. It is the title that the consumer relies upon, just as they do with the name of any other product, to determine that he is purchasing what he intended. Any unauthorized use of a trademark within the body of an

expressive work, as opposed to its title, generally poses far less of a threat of confusion to the consumer, because at the point, the consumer can determine from the content itself (not just the title) whether the work is actually associated with the trademark.

Appellees attempt to minimize this particular vulnerability of consumers to confusingly similar titles (Br. at 44) by positing that, before purchasing Appellants' book or Appellees' movie, consumers could "review the synopses of both works" to "easily ascertain that the two works are unrelated." Perhaps the unusually cautious consumer would do so — but the Lanham Act is intended to protect the more typical consumer. Someone paying for the movie "GRINGO" would see the title of the movie before "buying a ticket" but typically cannot, does not or is not inclined to investigate its content before doing so, especially if he already anticipates the content based upon an association with the book evoked by the title of the movie. The title, therefore, is an infringer's best and often only opportunity to dupe the consumer into the purchase based upon a false association.

For that reason, the <u>Rogers</u> court concluded in its footnote 5: "The public interest in sparing consumers this type of confusion [i.e., from two confusingly similar titles] outweighs the slight public interest in permitting authors to use such titles." This Court has apparently not adopted footnote 5 in its adoption of <u>Rogers,</u>

but that does not mean that the particular vulnerability of consumers to being misled by two confusingly similar titles should be disregarded altogether.

**A.   The Second Prong Of Rogers Is Satisfied In A Title-vs-Title Case Where The Likelihood Of Confusion Is "Particularly Compelling" – Particularly Where The Defendant Has <u>Intended To Deceive Consumers By Using The Title</u>**

As shown in Appellants' opening brief (at 20-31), the Second Circuit (among other courts) has adjudicated title-vs-title cases by taking into account the particular vulnerability of consumers in such cases but still doing so *within* the framework of <u>Rogers</u>.  In <u>Twin Peaks Productions, Inc. v. Publications Intern., Ltd.</u>, 996 F.2d 1336, 1379 (2d Cir. 1993),  the Court entertained a case of two confusingly similar titles, yet, rather than resorting to footnote 5 and finding the <u>Rogers</u> test inapplicable, the Court applied the test but determined that the  defendant's use of the title could be "explicitly misleading" under the second prong, even without any actual misstatement of association or sponsorship, if the likelihood of confusion was "particularly compelling." Appellants submit that is also the correct approach here.

Appellees contend (at 35) that this approach to title-vs-title cases requires this Court "to ignore binding Ninth Circuit precedent."  That is not so.  Insofar as this Court has determined to apply <u>Rogers</u> without footnote 5, this approach does that. Insofar as this Court has determined to be faithful to the <u>Rogers</u> line of jurisprudence,

this approach to title-vs-title cases does that as well, as <u>Twin Peaks</u> is a significant part of that jurisprudence.[1]

This approach to title-vs-title cases doesn't contradict or even modify precedent in this Court but usefully expands upon it. As shown above, there is scant guidance in this Circuit for this category of cases, and, in that context, several district courts in this Circuit have addressed such cases by affording greater protection to plaintiffs through the approach suggested here — particularly where the defendant has allegedly *intended* to deceive consumers with a confusingly similar title. (Appellants Br. at 28-33).

Just as the Court, in <u>Gordon v. Drape Creative, Inc.</u>, 909 F.3d 257 (9th Cir. 2018), elaborated upon precedent (rather than departed from it) in setting out the circumstances under which a defendant's use of a mark could be "explicitly misleading," based upon "the degree to which the junior user uses the mark in the same way as the senior user" (see Point IV, *infra*), this approach allows the Court to elaborate upon what can be "explicitly misleading" in the context of title-vs-title cases, based upon the degree of likelihood of confusion. Like <u>Gordon</u>, this approach does not change the requirement that the defendant's use of the mark be "explicitly

---

[1] <u>Twin Peaks</u> remains the prevailing authority in such cases in the Second Circuit. <u>See</u> <u>Hermes Intl. v. Mason Rothschild,</u> 2022 WL 1564597) (S.D.N.Y. May 18, 2022), and in the Fifth Circuit (Appellants Br. at 23).

misleading;" it only elaborates upon what can be "explicitly misleading," in the particular context of title-vs-title cases, beyond the particulars of <u>Dr. Seuss</u>.[2]

This approach is easily reconciled with <u>Dr. Seuss</u>, because the same result would have followed there under this approach, based on the defendant's express disclaimer. In fact, <u>Twin Peaks</u> (at 1379) expressly contemplated such disclaimers and stated they would likely preclude any likelihood of confusion compelling enough to satisfy the second prong of <u>Rogers</u>. And, just as <u>Gordon</u>, like <u>Twin Peaks,</u> rejected the strict requirement of an "affirmative statement of the plaintiff's sponsorship or endorsement," <u>Dr. Seuss</u> (at 462) conforms to this and "requires [only that] ***the use*** be an 'explicit **indication**,' 'overt claim' *or* 'explicit misstatement' about the source of the work." (Emphasis added). The district court here (and Appellees) mischaracterize this as a requirement that the "defendants made an overt claim or explicit misstatement" about the source of the work (ER-8, Br. at 20-21),

---

[2] Contrary to Appellees' mischaracterization (Br. at 37), Appellants are not suggesting (and Second Circuit authority does not indicate) that "<u>Rogers</u> only presumptively applies" to title-vs-title cases. Rather, under this authority, <u>Rogers</u> *always* applies to title-vs-title cases, but there is greater allowance for what can be deemed "explicitly misleading" under the second prong. The <u>Gordon</u> Court rejected the "rigid requirement" that, to be explicitly misleading, the defendant must make an affirmative statement of the plaintiff's sponsorship or endorsement;" in effect, the Court treated liability in the absence of such an affirmative statement as a presumption that could be overcome based on the degree of the defendant's similar usage of the mark. Likewise, <u>Twin Peaks</u> at 1379, allows this presumption to be overcome based on a showing of likelihood of confusion that is "particularly compelling."

but <u>Dr. Seuss</u> confirms that (i) an "explicit indication" of the source of the work is also acceptable in lieu of an overt claim or explicit misstatement, and (ii) the defendant's *use* of the mark, under certain circumstances (even without any statement) can be that "indication." Likewise, under <u>Twin Peaks</u>, the use of the mark can itself be an explicit indication about the source of the work when the mark is the title of a plaintiff's expressive work, and the defendant has used it (or a confusingly similar title) as the title of his own expressive work in circumstances that make the likelihood of confusion from that usage "particularly compelling."[3]

### B. Appellants Have Alleged A Particularly Compelling Likelihood of Confusion from Defendant's Similar Use of the Title Here

Appellees contend (Br. at 42-45) that, even under the foregoing standard, Appellants have not satisfied the second prong of <u>Rogers</u>, because they have not alleged a particularly compelling likelihood of confusion from Appellees' use of the mark, based on the factors set forth in <u>AMC v. Sleekcraft Boats</u>, 599 F.3d 341 (9th Cir. 1979).[4] The Second Amended Complaint, however, demonstrates otherwise:

---

[3] Furthermore, this approach to title-vs-title cases is consistent even with the *dicta* of <u>Twentieth Century Fox</u>. As shown above, the Court observed there that <u>Rogers</u> footnote 5 "may be ill-advised *or unnecessary*, because identifying misleading titles that are confusingly similar to other titles has the potential to duplicate either the likelihood-of-confusion test or the second prong of <u>Rogers</u>." In line with that view, the <u>Twin Peaks</u> approach disregards footnote 5 and instead subjects misleading titles in title-vs-title cases to an enhanced likelihood of confusion test as part of the second prong of <u>Rogers</u>.

[4] The district court made no findings on the likelihood of confusion.

### 1. Strength of the Mark

Appellees contend that the "GRINGO" mark is a weak mark, because, "as a colloquialism, 'gringo' is the epitome of an undistinctive common word." If it is a common word, however, it is common only in other countries; Oxford's defines "gringo" as a term "in Spanish speaking countries and contexts for an American who is not Hispanic or Latino." In this country, therefore, the term is hardly "undistinctive" or commonly used. In any event, its distinctiveness is not an issue, because Appellants alleged facts that show their mark in the title "GRINGO" had acquired protectable distinctiveness through secondary meaning (ER-19-20; SAC ¶37-38), and the district court ruled the allegations to be sufficient. (ER-29). Appellees have not challenged that ruling.

### 2. Proximity of the goods

"Complementary goods" bearing similar marks "are particularly vulnerable to confusion." Sleekcraft at 350. Books and movies are complementary expressive works; the Court can certainly take notice of how often books are adapted to movies. See e.g., CI Games S.A.v. Destination Films, 2016 WL 9185391 at *9 (C.D.Cal. Oct. 25, 2016).

### 3. Similarity of the marks

The degree of similarity in the marks is one of the most important factors under Sleekcraft. Here the title of Appellees' film title is *identical* to (not just similar

to) Appellants' trademarked book title. Furthermore, "closeness in meaning can itself substantiate a claim of similarity." Id. at 352. Here, Appellees not only used the very same mark, they used it to connote the very same thing, i.e., an English-speaking protagonist out of his element south of the border. Appellees contend (at 43) that the marks are dissimilar, because "different fonts and styles are used for the respective titles, and the covers are different." Appellants submit that the actual similarities in fonts and styles, as they appear on the book cover and movie poster, speak for themselves. (ER-16; SAC ¶25). In any event, in assessing the likelihood of confusion, "similarities weigh more than differences." Sleekcraft at 351.

4. Marketing Channels

"Convergent marketing channels increase the likelihood of confusion." Id. at 353. Appellees assert (at 44) that Appellants' "only allegation on this point is that both parties listed their works on Amazon." Of course, that is disingenuous; each of the parties here did not merely "list their works on Amazon" — Appellants' book was a #1 Amazon Bestseller, and Appellees movie was an "Amazon Original Movie." The parties marketed their works primarily through the same marketing platform, primarily to the same audience of Amazon entertainment media consumers.

5. <u>Type of goods and purchaser care</u>

The issue here is whether the two products are of the sort that an "average buyer" would normally exercise the degree of care before purchasing either product that would minimize the likelihood of confusion. <u>Id</u>. at 353. There is no reason to believe that, before purchasing Appellants' book or Appellees' movie, the average consumer associating one with the other by reason of the title would make the effort to investigate the content of both works to determine if they were actually related. Neither item is expensive enough or unusual enough to assume that the "average buyer" is that discriminating.

6. <u>Intent</u>

"When the alleged infringer ***knowingly*** adopts a mark similar to another's, ***reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived.***" <u>Id</u>. at 354 (emphasis added). <u>See also</u> <u>Electronic Arts, Inc. v. Textron, Inc.</u>, 2012 WL 3042668 (N.D.Cal. July 25, 2102) (motion to dismiss for failure to satisfy prong two of <u>Rogers</u> would fail where defendant "intended consumer confusion."). Thus, a defendant's intent to deceive consumers strongly indicates a likelihood of confusion. Appellants have alleged (with substantiation) not only that Appellees intended to use Appellants trademarked title without authorization but intended to do so for the very purpose of deceiving consumers. Appellees cite <u>GoTo.com, Inc. v. Walt Disney Co.</u>, 202 F.3d 1119, 1208

14

(9th Cir. 2000), for the proposition that "minimal importance" should be attributed to their intent, but what this Court actually said is that "an intent to confuse customers is not required for a finding of trademark infringement," not that the existence of such intent is not a substantial factor in finding likelihood of confusion. Id.

### 7. Likelihood of expansion

As Appellees state (at 45), this factor is "relatively unimportant," where, as alleged here, the parties "already compete to a significant extent."

### 8. Evidence of actual confusion

Appellants allege some such evidence (ER-18-19; SAC ¶¶32-35), but it bears emphasis that Sleekcraft considered this (and the other factors) post-trial, not, as here, on the face of the pleadings. In any event, "this factor is weighed heavily only when there is evidence of past confusion." Id. at 353.

Accordingly, Appellants submit they have alleged a particularly compelling likelihood of confusion. Significantly, however, in Twin Peaks the Second Circuit had the benefit of reviewing these factors in the context of summary judgment. Where, as here, the plaintiff has adequately alleged, *inter alia*, (a) a valid trademark in the title of an expressive work acquired by secondary meaning, (b) the defendant's unauthorized use of a confusingly similar (or identical) title as the title of its own expressive work, and (c) the defendant's use of plaintiff's mark with the intent to

deceive consumers, likewise it should not be resolved on the pleadings whether the plaintiff can show a particularly compelling likelihood of confusion to satisfy the "explicitly misleading" prong under <u>Rogers</u>. <u>See also</u> <u>Hermes Intl.</u>, <u>supra</u>, at \*7 (resolving this issue is "fact-intensive;" doing so "on a motion to dismiss is not appropriate.").

### C.    <u>Appellants Have Not Waived This Argument</u>

In their opposition, Appellees make no showing, either as a matter of equity, logic or precedent, as to why title-vs-title cases — particularly such cases where intentional deception is alleged — should not be addressed in this Circuit through the "particularly compelling" standard under the <u>Rogers</u> jurisprudence. They simply rely on the fact that this Court has not yet articulated this approach (or any other approach) in the one title-vs-title case that it has adjudicated under very different facts.

Evidently recognizing the weakness of their opposition on the merits, Appellees resort to the argument that this Court should not even consider the merits, because, according to Appellees, Appellants waived this argument by presenting it for the first time on this appeal. (Appellees Br. at 34). This is both factually and legally incorrect.

In opposing Appellees' first motion to dismiss, Appellants argued that Appellees had used the "GRINGO" title in such a way and to such an extent that the

16

resulting likelihood of confusion was so compelling as to render the usage "explicitly misleading." The district court rejected this argument, finding the allegations "less compelling than the allegations that <u>Dr. Seuss</u> found insufficient." ER-42. Appellants then argued at length in opposition to Appellees' motion to dismiss the Second Amended Complaint (at SER-33-47) that in fact Appellants' usage of the mark created a likelihood of confusion "a good deal more compelling than in <u>Dr. Seuss</u>" and thereby was "explicitly misleading." (SER-45).

Not only are Appellees mistaken, as a matter of fact, that Appellant have raised this argument on appeal for the first time, they are mistaken, as a matter of law, that Appellants would waive this argument even if it were raised now for the first time. "Once a federal claim is properly presented, a party can make any argument [on appeal] in support of that claim; parties are not limited to the precise arguments they made below." <u>Yee v. City of Escondido,</u> 503 U.S. 519, 534 (1992). Thus, where an issue has been raised below, any argument in support of that issue can be raised for the first time on appeal. <u>See</u> <u>Hormel v. Helverling,</u> 312 U.S. 552, 556 (1941); <u>Trustee of the Amalgamated Insur. Fund v. Geltman Industries, Inc.,</u> 784 F.2d 926, 931 (9th Cir. 1986), <u>cert. denied,</u> 479 U.S. 822. Appellees raised the issue below as to whether Appellants satisfied the second prong of <u>Rogers</u>, and Appellants argued below that they did. Appellants *did* raise their present arguments

below, but, in any event, even if this was not so, they are not limited now to the same arguments on the same issues already raised below.[5]

## IV. IN ANY EVENT, APPELLANTS SATISFY THE SECOND PRONG OF ROGERS UNDER THE GORDON CRITERIA

Even if this Court declines to address this case in the manner suggested for title-vs-title cases in particular, Appellants have shown (Br. at 37-46) that they still satisfy the second prong of Rogers under the criteria set forth for expressive works more generally, in Gordon, supra, (9th Cir. 2018).

As Appellees eagerly point out (Br.at 28), this Court has often observed that "the mere use of a trademark alone cannot suffice to make such use explicitly misleading." See e.g., Mattel, Inc. v. MCA Records, 296 F.3d at 902. However, the

---

[5] The two cases cited by Appellees (Br. at 34) are not to the contrary. In Inland Cities Exp., Inc. v. Diamond Nat. Corp., 524 F.2d 753,755 (9th Cir. 1975), the appellant raised an entirely new *issue* on appeal, not a new *argument* on an issue previously raised. This Court stated: "The *issue* was never presented to the district judge, and he had no opportunity to rule on it." In In re. E.R. Fegert, Inc., 887 F.2d 955 (9th Cir. 1989), this Court observed that "there is no bright-line rule to determine whether a matter has been properly raised." The Court did indicate that new arguments are normally not entertained on appeal, but the context makes clear that the Court was referring to new arguments that were on *new issues*. The case cited by the Court there, Rothman v. Hospital Service of Southern California, 510 F.2d 956, 960 (9th Cir. 1975), illustrates that distinction. There the appellant had challenged in the district court an administrative determination that his medical provider had not been overpaid. On appeal to this Court, he raised the issue for the first time as to whether the administrative proceeding generally was in compliance with the Medicare Act and the Constitution. Citing to Hormel, supra, the Court held that those arguments had been waived, because they went to new *issues*, having nothing to do with whether his provider had been overpaid.

Court made the point in <u>Gordon</u> (at 270) that "each time we have made this observation, it was clear that consumers would not view the mark alone as identifying the source of the artistic work" and that "[i]n some instances the use of a mark alone may explicitly mislead consumers about a product's source if consumers would ordinarily identify the source by the mark itself." Appellants maintain that this is such an instance.

It is true that <u>Gordon</u> (at 270) cited to <u>MCA Records</u> (at 902) for the proposition that "consumers 'do not expect [titles] to identify' the 'origin' of the work." However, <u>Gordon</u> did so in reference to <u>MCA Records,</u> <u>Twentieth Century Fox</u> and other cases that were *not* title-vs-title cases. The <u>Gordon</u> Court then expressly contrasted those cases with the following hypothetical of an actual title-vs-title case: "Had Twentieth Century Fox titled its new show 'Law & Order: Special Hip-Hop Unit' [rather than 'Empire'] — such identical usage could reflect the type of 'explicitly misleading description' of source that *Rogers* condemns." <u>Id</u>. The Court then cited <u>Rogers</u> for the proposition that "misleading titles that are confusingly similar to other titles can be explicitly misleading." <u>Id</u>. The obvious implication was that because "Law & Order: Special Victims Unit" was the title of another expressive work that already had wide recognition, using that title in the same way, i.e., as the title of another expressive work, with only a slight variation,

could be "explicitly misleading," because consumers *would* expect the similar title to identify the source of the work.

Here, Appellees did exactly that — but even more so. They used as the title of their expressive work the *identical* title of Appellants' expressive work, which already had wide recognition among consumers and already had acquired secondary meaning to be a protectable trademark. In such an instance, consumers would expect the title to identify the source of the work.

It significance too that the Court in <u>Gordon</u> did not actually quote <u>MCA Records</u> accurately. <u>MCA Records</u> did not use the word "origin;" rather it stated that consumers "do not expect [the title of a book or a movie] to identify the *publisher or producer*" (emphasis added). Appellants are not suggesting otherwise. Consumers of the book "GRINGO" would not expect to identify its publisher from its title, and consumers of the movie "GRINGO" would not expect to identify its producer from its title, or even the publisher of the book with the same title. But that does not mean consumers would not expect a movie title to identify as its source material a book with the same title, especially when that title had already acquired secondary meaning.

The upshot is this: When an expressive work uses a title that has not been used before (or that has not acquired secondary meaning), consumers do not expect the title to identify the origin of the work. But when the expressive work uses a title

that has been used before and has acquired secondary meaning (such as "Law & Order Special Unit"), consumers typically do expect that title to identify the origin of the work. Someone buying a ticket to a movie titled "The Handmaid's Tale" would not expect the title to identify the origin of the work if there had never been a bestselling book with the same title, but because there had been a recent bestseller with the same title, and because movies are so often adaptations of books, people purchasing a ticket to such a movie by that title would very definitely associate the title with the book. The Second Circuit expressly acknowledged this in <u>Rogers</u> (at 997-998): "Where the title of a movie or book has acquired secondary meaning … the title is sufficiently well known that consumers do associate it with a particular work."

In such cases — where consumers expect the title to identify the source of the work — <u>Gordon</u> states (at 270) that "a more relevant consideration [than whether the defendant makes "mere use" of the mark] is the degree to which the junior user uses the mark in the same way as the senior user." Here, Appellees used Appellants' mark in the very same way as Appellants not only by using it as the title of their own expressive work, but also by using it (i) to refer to the protagonist of their expressive work, (ii) to refer to a protagonist who was a non-Hispanic, English-speaking American, on the run and out of his element south of the border, after distributing marijuana, and (iii) in conjunction with the Amazon imprimatur to market their

21

expressive work primarily to Amazon consumers of media entertainment. That is more than "mere use." And it is also more than "mere use" where, as here, a defendant uses a mark to intentionally deceive consumers as to an association with a plaintiff's product. That is something more that also satisfies prong two and invokes liability. Appellants allege a substantial degree of similar use for the purpose of intentional deception, which, under Gordon, can render the use "explicitly misleading." [6]

Nevertheless, Appellees finally contend, as the district court concluded (ER-9), that the second prong of Rogers is still not satisfied here, because Appellees' "film tells a different story than [Appellants'] book." They point to the observation in Gordon (at 270), that, after considering "the degree to which the junior user uses the mark in the same way as the senior user," "a second consideration relevant to the 'explicitly misleading' inquiry is the extent to which the junior user has added his or her own expressive content to the work beyond the mark itself."

However, in this regard, it bears repeating that Gordon was not a title-vs-title case; in fact, Gordon did not involve any title at all. The plaintiff had a trademark

---

7 The Court in Gordon concluded that a jury could find the defendant had used plaintiff's mark in "the same way" as the plaintiff, sufficient to make it "explicitly misleading," even though the plaintiff had used the mark in an entirely different expressive medium (YouTube videos) than the defendants (in greeting cards). Appellants submit that, because movies are so often adaptations of books, the difference in medium here was even less significant in terms of "similar usage."

in a catchphrase used in the body of a video, and the defendant used a similar catchphrase, also not as a title but rather as part of the content *inside* its greeting cards. The fact that the defendant added "expressive content" to the mark in Gordon was understandably a relevant consideration, because the mark appeared as part of the content; therefore, whether it was explicitly misleading would be assessed in the context of the content. Here, on the other hand, where Appellants' mark was used as the title of Appellees' work, whether or not the Appellees added their own expressive content to the body of the work is not particularly relevant to assessing whether consumers had already been misled into purchasing the work by its confusingly similar title before ever reaching its content.

As Appellants have previously pointed out, it is not the purpose of trademark law to prevent infringers from "telling the same story" as the owner of the mark; that is the province of copyright law. It is instead the purpose of trademark law (insofar as it applies to expressive works) to prevent infringers from telling a *different* story from the owner of the mark when consumers have been misled by the mark into expecting the same story. To absolve the infringer of a trademarked title because he tells a different story under that title from the one associated with the title is excusing him from the very transgression that trademark law is intended to curb.

## V.    THIS COURT'S PUNCHBOWL DECISION

Earlier this week, this Court affirmed summary judgment for a Lanham Act defendant, finding the second prong of <u>Rogers</u> was not satisfied, in <u>Punchbowl, Inc. v. AJ Press</u>, 2022 WL 16911996 (9th Cir. Nov.14, 2022). This was not a title-vs-title case.  Plaintiff's mark was not in the title of an expressive work but rather in the name of an online party and event planning service, and the defendant's use of the mark was as part of the name of its subscription-based online news publication. Nevertheless, the decision is instructive here, because it rested on factors which stand in sharp contrast to the circumstances here:

<u>First</u>: The Court found (at *7) that "the parties' uses of the name 'Punchbowl' are quite different."  They used the mark for "two different enterprises that do very different things" and "operate in different spaces."  "In short, no reasonable buyer would believe that a company that operates a D.C. insider news publication is related to a 'technology company' with a "focus on celebrations, holidays, events and memory-making."  <u>Id</u>. at *9.  Here, on the other hand, Appellants and Appellees were both in the business of producing expressive works in closely related media. And, as shown above, they both used the mark in very similar ways and operated in very much the same space — the Amazon entertainment media platform.

<u>Second</u>: The Court (at *6) attributed significance to the fact that the defendant added the word "News" to the one-word mark (just as the defendant in <u>Dr. Seuss</u>

had added a word to the mark there).  Here, Appellees added no words to Appellants' one-word mark.

Third:  The defendant in <u>Punchbowl</u> added a slogan and logo to the mark, which clearly "reflected the subject matter and theme" of its publication, thereby further differentiating it from the plaintiff.  <u>Id</u>. at *2.  Here, Appellees did not do any of that; to the contrary, they depicted on their movie poster a man on the run (ER-16), thereby only further implying an association with Appellants' book, which depicted on its cover a "Wanted" poster and did so underneath the subtitle referring to the protagonist as a "fugitive."

Fourth:  The "Punchbowl News" publications identified its co-founders "at the top of the page, near Punchbowl News' name."  <u>Id</u>. at *8.  Though this was not as explicit as defendant's disclaimer of any association with the plaintiff in <u>Dr. Seuss</u>, the Court deemed it significant.  Citing <u>Dr. Seuss</u>, the Court stated: "An expressive work is less likely to be misleading when it clearly discloses its origin." <u>Id.</u>  Appellees here made no such disclosure on their movie poster or otherwise.

Fifth: Unlike here, there was no suggestion whatsoever in <u>Punchbowl</u> that the defendant used the plaintiff's mark as its title to *intentionally* deceive consumers.

## VI.  THE DISTRICT COURT IMPROPERLY DISMISSED APPELLANTS' UCL CLAIM

The district court held that its dismissal of Appellants' Lanham Act claim for failure to satisfy <u>Rogers</u> likewise required dismissal of their UCL claim, with prejudice.  Appellants have cited several California cases clearly to the contrary.

In <u>Winchester Mystery House, LLC v. Global Asylum, Inc.</u>, 210 Cal.App.4[th] 579, 594-95 (Cal.App.2012), the Court adopted footnote 5 of <u>Rogers</u> and held that the <u>Rogers</u> test does *not* apply to cases under the UCL of confusingly similar titles.  Likewise, in <u>No Doubt v. Activision Publishing, Inc.</u>, 192 Cal.App. 4th 1018, 1036 (Cal.App. 2011), the Court held that the likelihood of confusion test rather than the "explicitly misleading" test applied to the UCL claim there and observed that "no California court has interpreted section 17200 to require a showing that the defendant's actionable conduct was 'explicitly misleading' when the First Amendment is implicated." Both <u>Winchester</u> and <u>No Doubt</u> were recently cited with approval by the Supreme Court of California for "the regulability of explicitly misleading titles."  <u>See</u> <u>Serova v. Sony Music Entertainment</u>, 13 Cal. 5th 859, 879 (Aug.18, 2022).

Rather than point to any state court authority, Appellees (at 51-54) cite to four federal cases to ostensibly refute that prevailing state law.  None of those cases is controlling authority as to what is required under the UCL, yet even these cases do not actually contradict Appellants' position:

Cleary v. News Corp., 30 F.3d 1255 (9th Cir. 1994), preceded this Court's decision in MCA Records.  Therefore, while it is true that the Court stated there that a UCL claim and a Lanham Act claim "are congruent," that was only as the Court construed and applied the Lanham Act *at that time* — which was under the likelihood of confusion test, before Rogers was ever adopted in this Circuit. Appellees also cite Harold Lloyd Ent., Inc., v. Moment Factory One, Inc., 2015 WL 12765142 at *12 (C.D.Cal. Oct.29, 2015), for this same proposition of substantial congruency, but the only authority cited by the district court for that proposition was Cleary itself, which does not support it.

In E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc., 547 F.3d 1095, 1101 (9th Cir. 2008), the Court stated, albeit without any explanation or citation to state law, that "the First Amendment defense applies equally to [plaintiff's] state law claims as to its Lanham Act claim."  That decision did follow this Court's adoption of Rogers in MCA Records, but it still *preceded* the adoption of footnote 5 under the UCL in Winchester in 2012. And in 2011, the California court in No Doubt expressly referred to and rejected this statement of congruence in E.S.S., stating (at 1040, n.8) that "we are not bound by the Ninth Circuit's interpretation that the *Rogers* test applies to section 17200 [UCL] claims."  The California court observed: "E.S.S. contains no analysis supporting its conclusion that the *Rogers* test should apply to

section 17200 claims, because the plaintiff [in E.S.S.] conceded that the *Rogers* test applied, and the Ninth Circuit thus had no cause to discuss the issue."

Finally, in <u>Twentieth Century Fox Television v. Empire Distrib., Inc.</u>, 161 F.Supp. 3d 902, 910 (C.D.Cal. 2016), the *district* court held that the First Amendment barred both the Lanham Act and state law claims — again without any discussion of the state law — but in doing so, the court cited as its sole authority on the state law <u>Mallard Creek Indus., Inc. v. Morgan</u>, 56 Cal.App. 4th 426, 434-345, (Cal.App. 1997). However, <u>Mallard Creek</u>, like the other state cases above, actually applied the likelihood-of-confusion test, not the <u>Rogers</u> test, to the state law claim.

In <u>Betty's Foundation for Elimination of Alzheimer's Disease v. Trinity Christian Center</u>, 2022 WL 807391 (9th Cir. March 16, 2022), this Court observed (at n.1): "Because Betty's Foundation does not challenge the district court's ruling that the *Rogers* test applies to state law claims, we have no occasion to address whether the *Rogers* test applies to any state laws" (citing *Twentieth Century Fox,* at 875 F.3d 1196 n.1). This case presents that occasion. Accordingly, the Court should now recognize, pursuant to California law, that the basic likelihood of confusion test applies to title-vs-title claims under the UCL and remand this claim to the District Court with direction to allow it to be refiled in State Court, or, if this Court has any doubt, it should certify the question to the California Supreme Court for adjudication.

## **CONCLUSION**

For the foregoing reasons, it is respectfully submitted that this Court should

reverse and remand as specified above and in Appellants' opening brief.

Dated:  November 16, 2022

Respectfully submitted,

*/s/ Spencer Dreier*

SPENCER DREIER
235 East 44th Street
New York, NY 10017
Phone: 917.841.9571
Email: s.d.dreier@gmail.com
*Counsel for Plaintiffs-Appellants Daniel E. Davis, Peter Conti and Gringo Holdings, LLC*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rules of Appellate Procedure 32(a)(7)(C) and 9th Circuit

Rule 32-1, I certify that the attached brief is proportionally spaced, has a typeface of

14 point, and contains 6,996 words, including footnotes as calculated by the

Microsoft Word 2016 word-processing software used to generate this brief.

Dated:  November 16, 2022

Respectfully submitted,

*/s/ Spencer Dreier*
SPENCER DREIER
235 East 44th Street
New York, NY 10017
Phone: 917.841.9571
Email: s.d.dreier@gmail.com
*Counsel for Plaintiffs-Appellants Daniel E. Davis, Peter Conti and Gringo Holdings, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned does hereby certify that on November 16, 2022, I caused this Reply Brief of Appellants to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Moez M. Kaba
Hueston Hennigan LLP
523 West 6th Street
Suite 400
Los Angeles, CA 90014

*/s/ Spencer Dreier*
SPENCER DREIER
235 East 44th Street
New York, NY 10017
Phone: 917.841.9571
Email: s.d.dreier@gmail.com
*Counsel for Plaintiffs-Appellants Daniel E. Davis, Peter Conti and Gringo Holdings, LLC*